## BUSBY v. MITCHELL.

1. Where land was conveyed to be held in trust for the erection of a church and academy for the benefit of a Lutheran congregation, the church council could not transfer to others who were not Lutherans, or to a town council, any portion of the land for the establishment of an academy or school.

2. A school-house was built upon this land in large part by subscriptions solicited from persons that were not Lutherans, and by an appropriation from the town council, and this school-house having been burned another was built in like manner. *Held,* that this did not estop the Lutheran congregation from asserting their right of property in this building.

3. Nor were the congregation or their officers estopped by the appointment [how appointed does not appear] of others than Lutherans to be trustees, and the application by such trustees for a charter for the school, such trustees not having interfered with the management of the school, which was conducted by the pastor of the Lutheran church.

Before PRESSLEY, J., Lexington, February, 1884.

The opinion states the case.

*Messrs. Meetze & Muller* and *W. T. Gary,* for plaintiffs.

*Messrs. L. F. Youmans* and *B. W. Bettis, Jr.,* contra.

October 2, 1885. The opinion of the court was delivered by

MR. JUSTICE MCIVER. On January 16, 1874, Rufus M. Shealey executed a deed, whereby he conveyed a certain parcel of land, containing about four acres, situate in the County of Lexington, near the town of Leesville, to S. Bouknight, D. C. Shealey, S. F. Hendrix, J. S. Derrick, S. L. Black, J. W. Hair, and J. C. Bodie, who were appointed a committee to erect a Lutheran church at Leesville, "provided the said committee shall erect a building for a congregation to worship in as a Lutheran church; and after said building is erected and a society formed, the right shall then vest in the Lutheran church, that is, to the council or vestry, as the case may be, to them and their successors in office forever, for the benefit of said Lutheran congregation

at Leesville, as it is intended to convey this lot for a church and academy, and also one acre of the same, at the northwest end, for the erection of a teacher's or professor's house, if required for that purpose, and as agreed upon by the vestry or wardens of said congregation."

It is conceded that these conditions have been complied with by the erection of a church building, the formation of a society by the congregation worshipping as a Lutheran church, and that the plaintiffs, who were duly elected to the several offices of pastor, elders, and deacons, form the church council of the said church known as "Luther Chapel," and as such "are vested with the care, management, and control of said Lutheran church and congregation, in the nature of trustees in all matters, both temporal and spiritual, and have especial care and control of all the property of said society."

It seems that the Rev. Mr. Busby, in addition to his duties as pastor of said church, was engaged in teaching a school in the town of Leesville, and that in the latter part of the year 1878, or first of 1879, a school-house was built on the lot above mentioned, in which a school was carried on very successfully by Mr. Busby as teacher until November, 1880, when the building was destroyed by fire, and another school-house was built on the same spot, and the school again carried on with success by Mr. Busby as teacher until June, 1883. Both of these school houses were paid for by funds subscribed by citizens of the town of Leesville and vicinity, including Lutherans as well as others, a large portion being furnished by the town council of said town. It also appears that trustees were appointed for said school, but exactly how they were appointed does not very distinctly appear.

On October 29, 1881, on the petition of sundry persons, some of whom were members of the Lutheran church and others not, a charter was obtained from the clerk of the court for Lexington County, incorporating certain persons, then acting as trustees of the school, under the name and style of "The Trustees of Leesville English and Classical Institute of Lexington County," for the purpose "of organizing, governing, and conducting an English and classical institute in the County of Lexington, in the State of South Carolina," in which charter the board of trustees

were authorized to fill any vacancy that might occur in their board by death, resignation, or otherwise. The petition for this charter was prepared by Mr. Busby at the request of the trustees. It does not appear that the trustees had much, if anything, to do with the management of the school until August, 1882, which seems to have been carried on entirely by Mr. Busby, he relying upon the tuition fees for his compensation; but the patronage having largely increased, it became necessary to have an assistant, and in August, 1882, an arrangement was made between the trustees and Mr. Busby, whereby they were to take the tuition fees and guarantee to him a salary of $600 and his assistant $450, only a portion of the trustees, however, assuming the payment of these salaries.

This arrangement seems to have worked satisfactorily to all parties until about March 1, 1883, when a difficulty arose which induced Mr. Busby to tender his resignation, which the trustees declined to accept. On the contrary, the arrangement previously entered into was cancelled, the school was turned over to Mr. Busby and his assistant, giving them full control and charge of the same, and the accounts for tuition were given up by the trustees to Busby and his assistant, they being required to refund to the trustees the amount paid by them on said salaries, which was done, and on March 1, 1883, a majority of the board formally resigned their office as trustees. From that time until the close of the scholastic year in June, 1883, the trustees do not appear to have in any way interfered with the school or its management. When the school closed in June, Mr. Busby announced that the school would be reopened in the following September, and very soon afterwards left on a visit to Virginia.

During his absence, the defendants claim that the board of trustees was reorganized by filling the vacancies occasioned by the resignation of a majority of the trustees, whereby the defendants in this action, except the Messrs. Watson, none of whom are Lutherans, became the trustees of the school. On July 14, 1883, the defendants, without authority from the officers of the Lutheran church, took possession of the school-house, took off the locks, put on new ones, and posted a notice on the building, warning all persons that "this house has this day been closed by order of the

board of trustees of Leesville English and Classical Institute, and all parties whomsoever are warned not to enter it without obtaining permission to do so from said board of trustees," which notice was signed by the defendant, D. D. D. Mitchell, as chairman, and the defendant, Joab Edwards, as secretary of said board. Soon afterwards said board appointed the defendants, Rev. J. E. Watson and E. O. Watson teachers, who were carrying on a public school in said school-house at the time this action was commenced, the said board claiming to have accepted the resignation of Mr. Busby, which in March previous had been tendered and declined.

In December, 1883, the plaintiffs filed their complaint, in which they demanded judgment: 1st. For the possession of said school-house; 2d. For damages; 3d. That the defendants be enjoined from the further use and occupation of said school-house, and from in any manner interfering therewith; 4th. For general relief. Judge Kershaw, to whom the application for a temporary injunction was made, held that "the trusts of the deed require the property should be held for the benefit of the said Lutheran congregation 'for a church and academy,' and it was not in the power of the council of the said church, in whom the property vested, to divert it from the purpose of the trust as expressed in the deed, and convert the same into a school, to be held and conducted by another body, not for the Lutheran church, but the public of Leesville, and in opposition to the authorities of said church." He therefore granted an injunction as asked for until the further order of the court.

The case came on for trial before Judge Pressley, and on May 8, 1884, he rendered a decree in which he found as matter of fact "that there was an understanding or implied contract between the town council of Leesville and the officers of the Lutheran church that the town council should have the right to build their school-house on the church lot; * * * that such contract gave them the right to the house, even though the title to the lot may remain in the church; that the members of the Lutheran congregation knew of the action of its officers, and took no legal measures to prevent its consummation, nor did they even give notice of any opposition to it; * * * that it was implied in that

contract that the Rev. Levi E. Busby was to be the teacher of the said school, and that the trustees have not the right to remove; him except for good cause." He therefore rendered judgment, that the school-house is the property of the trustees of the Leesville school; that the injunction granted by Judge Kershaw be dissolved; that the trustees of the school be permitted to take and retain possession of the said school-house; and that the Rev. Levi E. Busby be restored to his former position as teacher until good cause be shown for his removal.

, From this judgment both parties appeal; the plaintiffs alleging various errors in the findings of fact by the Circuit Judge, and of law in not finding that it was not in the power of the church council to divert the property from the purposes of the trusts as declared in the deed from Shealey above mentioned; and the defendants alleging error in the finding of fact that it was implied in the contract between the town council of Leesville and the officers of the Lutheran church that the Rev. Levi E. Busby was to be the teacher of said school, and in the conclusion of law that the trustees had no right to remove him except for good cause.

· We concur with Judge Kershaw in the view which he took of this case. The property conveyed by the deed of Shealey was to be held in trust for the Lutheran church at Leesville, not only for the purpose of a church, but also for an academy. The deed declares this purpose in explicit language: "It is intended to convey this lot for a church and academy." There is no discretion vested in the church council as to whether or not the property should be used for both of these purposes, but, on the contrary, there was just as much obligation that the property should be used for an academy for the benefit of the Lutheran church as that it should be used for a church. The only discretion conferred upon the church council or vestry was as to the appropriation of one acre at the northwest end of the lot for the erection of a teacher's or professor's house. The deed, after using the language last above quoted, proceeds as follows: "And also one acre of the same at the northwest end for the erection of a teacher's or professor's house, if required for *that* purpose, and as agreed upon by the vestry or wardens of said congregation." This language plainly shows that it was only the last mentioned purpose.

that was left to the discretion of the church council, but that the requirement that the property conveyed should be used for the erection of a church and academy for the benefit of the Lutheran congregation at Leesville, was imperative. This being so, it follows necessarily that the church council had no more authority to transfer to others, alien to the Lutheran faith, any portion of the property for the establishment of an academy or school, than they would have had to transfer any portion of it for the establishment of a church to be owned and controlled by those who were of a different faith from that of the Lutherans.

Under this view of the case it becomes unnecessary to inquire, except so far as the question of estoppel is concerned, whether the conclusion of fact reached by the Circuit Judge, "that there was an understanding or implied contract between the town council of Leesville and the officers of the Lutheran church, that the town council should have a right to build their school-house on the church lot," upon which his judgment mainly rests, can be maintained; for even if the church council had undertaken to convey such right to the town council in the most formal manner, they would have had no authority so to do.

It is contended, however, that the Lutheran church, represented by their officers, the plaintiffs in this case, are estopped from setting up the claim which they now make, because "the members of the Lutheran congregation knew of the action of its officers and took no legal measures to prevent its consummation, nor did they even give notice of any opposition to it." The "action of its officers" here alluded to is that from which the Circuit Judge inferred that there was such an implied contract with the town council as that above referred to. There certainly is no evidence of any express agreement between the church council and the town council like that mentioned; on the contrary, the testimony shows that whenever any member of the church council was applied to for the purpose, such application was met with a decided refusal, as is shown by the testimony of Busby, Rawls, S. P. Derrick, and Haltiwanger; and it is not pretended that either the church council or the Lutheran congregation took any action as organized bodies even looking to any surrender of their rights.

What we understand to be relied upon for the purpose of raising the estoppel is the fact that subscriptions were solicited and obtained from others than Lutherans, especially from the town council of Leesville, for the purpose of aiding in building the first school-house and rebuilding it after the fire, and the further fact that others than Lutherans were made members of the board of trustees, who applied for and obtained a charter for the school. As to the subscriptions, it does not appear that they were made or induced by any express understanding that the subscribers were thereby to acquire any right of property in the building, and the most that can be said is that some subscribed under the impression that they would thereby acquire such right; but, on the contrary, it appears from the testimony on the part of the plaintiffs that these subscriptions were asked for as donations or voluntary contributions.

To raise an estoppel it should have been made to appear that the owners of the property knew at the time that these subscriptions were made, not as voluntary donations, but with a view to acquire an interest in the property; for we can very well understand that the Lutheran congregation, having a flourishing school, taught by their pastor, might have supposed, in the absence of any information to the contrary, that the community generally would be willing to contribute means to provide a building for the school, which was non-sectarian in character, and in the prosperity and efficiency of which the public generally would be interested. For certainly it was a very great advantage to the town of Leesville and its vicinity to have such a school as that carried on by Mr. Busby was represented to be, even though it should be exclusively owned and controlled by Lutherans. It may be that the town council had no legal right to appropriate funds derived from taxation in aid of a school owned and controlled by a particular religious sect, and that may be one circumstance indicating that the town council supposed that they were thereby acquiring a right in the property, but we do not regard it sufficient to show conclusively that the Lutheran congregation were aware that such was the purpose of the subscription, especially when no such purpose was declared at the time the subscription was made; and, on the contrary, the testimony

shows that all these subscriptions were taken just as subscriptions are usually taken in a community to aid in building a church or academy.

The other fact relied upon to raise the estoppel, to wit, the appointment of others than Lutherans as members of the board of trustees and the application by them for a charter, was not sufficient, in our judgment, to call for any action on the part of the Lutheran church. Exactly how these trustees were appointed does not very distinctly appear, but the testimony shows that until August, 1882, they took little or no part in the management of the school, and even after that, and until the close of the school in June, 1883, the Rev. Mr. Busby seems to have had the entire control and management of the school. As long as this was the case there was nothing to excite the apprehensions of the Lutheran congregation, or to call for any action on their part. They might very well have been willing to have the support and influence of others brought to their aid as trustees of their school, as well as to have the benefits of a charter, especially as these others had, as they supposed, made liberal voluntary contributions in aid of their school, which had proved an ornament to the town and of great value to the community generally. But in all this there was nothing to estop the Lutheran church from asserting their rights when they subsequently found that by the unauthorized action of the defendants in July, 1883, their property was seized, their rights not only ignored, but denied, and their school passed into the hands of those alien to their faith, and they excluded from any control or management thereof.

We think, therefore, that the plaintiffs are entitled to be restored to the possession of the school-house in question, with the right to the control and management of said school.

Of course, under the view which we have taken of the case, the question presented by the defendants' appeal cannot arise, and need not be considered.

The judgment of this court is that the judgment of the Circuit Court be reversed, and that the case be remanded to that court for such further proceedings as may be necessary to carry out the views herein announced.